Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ALTERNATIVE ENERGY STORE INC.<br><br>Apelados<br><br>v.<br><br>ALEJANDRO URIARTE OTHEGUY<br><br>Apelante<br><br>v.<br><br>MSI ENERGY LLC; NEW ENERGY CONSULTANTS AND CONTACTORS;<br><br>TERCEROS DEMANDADOS | KLAN202300871 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2019CV11645<br><br>Sobre: Cobro de Dinero, Incumplimiento de Contrato, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 16 de noviembre de 2023.

## I.

El 29 de septiembre de 2023, el señor Alejandro Uriarte Otheguy (señor Uriarte Otheguy o el apelante) presentó una *Apelación* en la que solicitó que revoquemos una *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI) el 22 de junio de 2023, notificada y archivada en autos el 23 de junio de 2023.[1] En el dictamen, el TPI condenó al apelante a pagar a Alternative Energy Store, Inc. (Alternative Energy o la parte apelada) la cantidad de cincuenta y un mil ochocientos treinta y cinco dólares ($51,835) más intereses. De esta forma, el foro primario dictó sentencia en cuanto a la causa de acción por incumplimiento de contrato y cobro de dinero promovidas por

---

[1] Apéndice de la *Apelación*, págs. 294-307.

Alternative Energy en contra del apelante y dejó pendiente de adjudicación la reclamación de daños y perjuicios contractuales.

Ese mismo día, el apelante radicó una *Moción solicitando término para entregar apéndice* en la que notificó a esta Curia que tuvo problemas para digitalizar los documentos que conformarían el apéndice del caso y que podría entregarlo en o antes del 4 de octubre de 2023. En consecuencia, solicitó un término adicional para someterlo.

El 3 de octubre de 2023, emitimos una *Resolución* en la que le concedimos al apelante hasta el 4 de octubre de 2023 para presentar el apéndice correspondiente del recurso. Asimismo, le concedimos a la parte apelada hasta el 30 de octubre de 2023 para presentar su alegato en oposición.

El 4 de octubre de 2023, el señor Uriarte Otheguy presentó una *Moción en cumplimiento* en la que anejó el apéndice correspondiente a la *Apelación*.

Ese mismo día, el apelante radicó una *Moción informativa* en la que notificó a esta Curia sobre dos errores de fácil corrección respecto a la enumeración de los anejos en el escrito.

El 5 de octubre de 2023, emitimos una *Resolución* en la que dimos por cumplida nuestra orden al apelante, según fue dictada el 3 de octubre de 2023.

El 30 de octubre de 2023, Alternative Energy presentó su *Oposición a apelación civil* en la que solicitó que confirmemos la *Sentencia Parcial* emitida por el TPI.

Con el beneficio de la comparecencia de las partes, pormenorizaremos los hechos atinentes a la *Apelación*.

**II.**

El caso de marras tiene su génesis el 6 de noviembre de 2019 cuando Alternative Energy presentó una *Demanda* sobre cobro de dinero, incumplimiento de contrato y daños y perjuicios en contra

del señor Uriarte Otheguy, su esposa y la sociedad legal de gananciales compuesta por ambos.[2] En la reclamación, la parte apelada alegó que el apelante era el garantizador personal o fiador solidario de un contrato entre New Energy Consultants and Contractors LLC (NECC) y Alternative Energy, en el que este último le proveyó una variedad de bienes muebles. Según la parte apelada, el señor Uriarte Otheguy se obligó en su carácter personal al cumplimiento del contrato, lo cual también reconoció en comunicaciones posteriores. Producto de ello, planteó que el señor Uriarte Otheguy debía el pago por los materiales brindados y los gastos incurridos por Alternative Energy, los cuales ascendían a cincuenta y nueve mil ochocientos ochenta y siete dólares con dieciocho centavos ($59,887.18) y que acumulaban intereses a razón de veinticinco dólares con cincuenta y seis centavos ($25.56) diarios. En adición a la cuantía, solicitó la concesión de costas, gastos y honorarios de abogado no menores de doce mil quinientos dólares ($12,500) y daños por la cantidad de diez mil dólares ($10,000). Asimismo, informó que NECC se acogió a una quiebra voluntaria, pero, al ser una deuda personal del apelante, la obligación subsistía respecto a él.

El 26 de diciembre de 2019, el señor Uriarte Otheguy radicó su *Contestación a demanda* en la que planteó que no era el garantizador personal o fiador solidario del contrato suscrito entre NECC y Alternative Energy.[3] Al contrario, adujo que firmó el contrato como *Chief Executive Officer* de NECC, no en su carácter personal. Asimismo, alegó que cualquier comunicación posterior no constituyó un reconocimiento de la deuda porque ocurrieron en calidad de empleado de dicha compañía. Igualmente, negó que estuviese casado y aclaró su dirección física.

---

[2] Íd., págs. 1-4.
[3] Íd., págs. 5-8.

Luego de múltiples trámites procesales, relacionados a la consolidación del pleito con uno promovido por la parte apelada en contra de NECC, el 25 de marzo de 2021, el apelante presentó una *Demanda contra tercero* contra NECC y su principal accionista, MSI Energy LLC.[4]

El 11 de agosto de 2021, NECC radicó una moción titulada *Comparecencia especial y moción solicitando se ponga en vigor la paralización automática de los procedimientos* en la que informó que se había acogido a la quiebra y sometió una orden de paralización de los procedimientos emitida por el Tribunal de Quiebras de Estados Unidos para el Distrito de Puerto Rico (Tribunal de Quiebras).[5]

El 12 de agosto de 2021, el TPI dictó *Sentencia Parcial* en la que ordenó el archivo de la causa en contra de NECC.[6]

El 23 de septiembre de 2021, MSI Energy presentó una *Contestación a demanda contra tercero* en la que alegó no ser responsable por las acciones de NECC.[7]

El 7 de febrero de 2022, MSI Energy sometió una *Moción informativa y solicitando paralización en cuanto al tercero demandado MSI Energy LLC por haberse acogido a la Ley de Quiebras* en la que solicitó al TPI que ordenara la paralización de los procesos y el archivo de la causa en su contra tras haberse acogido a la quiebra.[8]

El 8 de febrero de 2022, el TPI emitió una *Sentencia Parcial* en la que ordenó el archivo de la causa en contra de MSI Energy.[9]

Posteriormente, continuado el procedimiento y luego de celebrada la Conferencia con Antelación a Juicio, el 17 de enero de

---

[4] Íd., págs. 186-189.
[5] Íd., págs. 193-196.
[6] Íd., pág. 197.
[7] Íd., págs. 198-199.
[8] Íd., págs. 204-206.
[9] Íd., pág. 208.

2023, el señor Uriarte Otheguy radicó una *Moción solicitando sentencia sumaria* en la que, en síntesis, solicitó la desestimación del pleito, debido a que la garantía personal que firmó no era válida en derecho, según alegó.[10] En la moción, planteó que únicamente estaba en controversia si la solicitud de crédito: (1) era válida, dado que ni NECC ni el señor Uriarte Otheguy fueron notificados sobre la cantidad aprobada en crédito ni la cuantía garantizada por el apelante; (2) era válida, porque no se revisó el crédito del señor Uriarte Otheguy ni se evaluó su nivel económico para corroborar su capacidad de garantizar el crédito; (3) tuvo el efecto de formalizar un acuerdo contractual que obligara al señor Uriarte Otheguy a garantizar el contrato entre las dos compañías.

Respecto a ello, en lo pertinente, aseguró que no estaba en controversia que: (1) el 21 de noviembre de 2018, Alternative Energy y NECC comenzaron relaciones comerciales; (2) antes de iniciar la relación, Alternative Energy le exigió una solicitud de crédito de NECC, la cual incluía una garantía personal; (3) el 19 de noviembre de 2018, el señor Uriarte Otheguy firmó la garantía personal contenida en la solicitud de crédito; (4) Alternative Energy no entregó documentos aprobando el crédito ni notificó la cantidad o límites aprobados al NECC o al apelante; (5) no se indagó el crédito del señor Uriarte Otheguy para verificar su capacidad como garantizador; (6) el 14 de junio de 2019, el apelante fue despedido; (7) el 10 de octubre de 2019, los nuevos dueños de NECC radicaron quiebra y dejaron de pagar la deuda de la corporación.

Según esos hechos, adujo que se obtuvo la firma del señor Uriarte Otheguy para cumplir con la exigencia de Alternative Energy, lo cual siguió un proceso informal y *pro forma* sin que se tuviese la intención de hacer valer las exigencias que imponía el

---

[10] Íd., págs. 241-263.

documento. Es decir, que NECC y sus socios nunca llevaron a cabo los tramites internos conducentes a formalizar la garantía personal. Además, planteó que el vínculo contractual no respetó las disposiciones del entonces vigente Art. 1727 del Código Civil de 1930 (Código Civil de 1930), 31 LPRA ant. sec. 5141, puesto que la persona a obligarse como fiador debía poseer tanto capacidad para obligarse como bienes suficientes para responder por la obligación garantizada. A su entender, Alternative Energy no tuvo la intención de indagar el crédito de NECC ni el apelante y tampoco le notificó a este último sobre qué era lo que estaba garantizando. Por último, arguyó que el alegado contrato de crédito no fue oficialmente cumplimentado por el departamento de crédito de Alternative Energy, ni fue firmado por representante alguno de la empresa.

El 16 de febrero de 2023, Alternative Energy presentó una *Moción en oposición a solicitud de sentencia sumaria de la parte demandada y solicitud para que se dicte sentencia sumaria a favor de la parte demandante* en la que solicitó al TPI que dictara sentencia a su favor, condenando al señor Uriarte Otheguy al pago de la deuda reclamada en su totalidad.[11] En suma, planteó que el apelante asumió la responsabilidad personal del pago de cualquier deuda que tuviera NECC con Alternative Energy, lo cual se desprendía del acuerdo suscrito entre las partes el 19 de noviembre de 2018. Según esbozó, en dicho acuerdo, Alternative Energy le vendió mercancía a crédito a NECC, mientras que, entre otras cosas, el señor Uriarte Otheguy se comprometió a lo siguiente:

> **Personal Guarantee**
> In consideration for AltE extending credit to the business identified below (NECC) for materials and/or services after this date at the request of applicants or its agents, the undersigned individual hereby personally guarantees unconditionally and irrevocably the prompt payment of any sums now or hereafter owed to AltE by the business identified below whether said sums are due under open account, contract or otherwise.[12] (Subrayado nuestro).

---

[11] Íd., págs. 265-292.
[12] Íd., pág. 275.

A su vez, sostuvo que, luego de que NECC incumpliera los términos de pago, la parte apelada comenzó trámites con el señor Uriarte Otheguy para que este satisficiera la deuda. Según adujo, en las comunicaciones subsiguientes como parte del trámite, el apelante reconoció la deuda y propuso un plan de pago. En adición, como cuestión de hecho, planteó que no estaba en controversia que: (1) las partes suscribieron un contrato el 19 de noviembre de 2018, el cual demuestra que el señor Uriarte Otheguy se comprometió solidariamente al pago de toda deuda incurrida por NECC, así como los intereses que devengara la misma; (2) la deuda estaba vencida, era líquida y exigible; (3) una cadena de comunicaciones por correo electrónico demostraba que el apelante reconoció la deuda y se comprometió a su saldo; y (4) el apelante continuaba teniendo un interés sobre la mercancía que Alternative Energy proveyó en crédito, por su carácter de accionista de NECC.

El 23 de junio de 2023, el TPI emitió la *Sentencia Parcial* recurrida en la que declaró No Ha Lugar la *Moción solicitando sentencia sumaria* promovida por el señor Uriarte Otheguy y, en cambio, declaró Ha Lugar la solicitud de sentencia sumaria presentada por Alternative Energy.[13] Consecuentemente, condenó al apelante al pago de cincuenta y un mil ochocientos treinta y cinco dólares ($51,835), más intereses. A su vez, declaró que continuaba vigente la reclamación por daños instada por Alternative Energy en contra del señor Uriarte Otheguy.

En su dictamen, el foro primario llegó a las siguientes determinaciones de hechos:

1. Alternative comenzó relaciones comerciales con New Energy el 21 de noviembre de 2018.
2. Para dar comienzo a dicha relación comercial, Alternative exigió una aplicación de solicitud de crédito a New Energy, con una garantía personal de uno de sus socios, la cual se firmó el 19 de noviembre de 2018 por Alejandro Uriarte Otheguy.

---

[13] Íd., págs. 294-307.

3. No existe controversia de que Alejandro Uriarte suscribió un documento titulado Credit Application, el cual contenía una sección llamada Personal Guarantee.

4. La sección llamada *Personal Guarantee* establece lo siguiente: "the undersigned individual hereby personally guarantees unconditionally and irrevocably the prompt payment of any sums now or hereafter owed to altE® by the business identified below whether said sums are due open account, contract or otherwise".

5. Una vez presentada la solicitud de crédito, las partes comenzaron una relación de negocios mediante la cual Alternative proveía equipo a New Energy, cumpliendo así con sus respectivas prestaciones.

6. Uriarte, mediante una comunicación escrita que sostuvo por correo electrónico con los representantes de Alternative, reconoció la deuda y se comprometió a presentar un plan de pago.

7. Alejandro Uriarte Otheguy, Fidencio Aldamuy Colón, Luis Acosta Benítez y Giovanni Cordero Bonini, fueron miembros de New Energy hasta el 11 de febrero de 2019, cuando vendieron su participación e intereses propietarios de dicha compañía a MSI.

8. Al presente, Alternative reclama una deuda ascendiente a cincuenta y nueve mil ochocientos ochenta y siete dólares con dieciocho centavos ($59,887.18) más intereses.

9. Previo a la radicación de la presente demanda, Alternative llevó a cabo gestiones de cobro con Uriarte por la totalidad de la deuda.[14]

A partir de estas, concluyó que el señor Uriarte Otheguy era el fiador solidario de cualquier deuda que tuviese NECC con Alternative Energy. Resolvió el foro primario que la obligación nació del documento titulado *Credit Application*, firmado por el apelante, el cual contenía una sección nominada *Personal Guarantee* que estableció, inequívocamente, la intención de este de obligarse personal y solidariamente al pago de cualquier cantidad de dinero que se le adeudara a Alternative Energy. En adición, coligió que: (1) el acuerdo cumplió con todos los requisitos necesarios de un contrato de fianza; (2) la responsabilidad de corroborar el crédito del señor Uriarte Otheguy o NECC no le correspondía a Alternative Energy, sino a la persona obligada a presentar al fiador; (3) el *Credit Application*, junto a la garantía personal, eran requisitos indispensables para establecer la relación de negocio entre las dos compañías; (4) después de la entrega del documento, se perfeccionó

---

[14] Íd., págs. 296-297.

el contrato y las partes comenzaron a cumplir sus respectivas prestaciones; (5) NECC recibió el crédito y realizó las adquisiciones correspondientes, contrario a lo alegado por el apelante de que desconocía si el crédito se había aprobado; (6) el señor Uriarte Otheguy reconoció la deuda y se comprometió a un plan de pago, lo cual quedó demostrado por comunicaciones entre las partes mediante correo electrónico; y (7) no se encontraba en la mejor posición para resolver sumariamente el asunto de los daños reclamados por Alternative Energy y, por lo tanto, se reservó la adjudicación de esa controversia para una etapa posterior.

El 8 de julio de 2023, el apelante sometió una *Moción solicitando reconsideración a sentencia parcial por la vía sumaria* en la que solicitó al TPI que dejara sin efecto su dictamen.[15] En su escrito, cuestionó la declaración jurada en la que Alternative Energy basó su solicitud de sentencia sumaria, así como la autenticidad del documento presentado para establecer la existencia de la deuda. A su entender, no existía documentación oficial alguna de la deuda, salvo por una secuencia de correos electrónicos que no fueron autenticados conforme a derecho.

El 28 de julio de 2023, Alternative Energy se opuso a la petición de reconsideración, argumentando que no procedía la petición y, aún más, solicitó la imposición de sanciones por temeridad en contra del apelante.[16]

El 30 de agosto de 2023, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la reconsideración.[17]

Inconforme, 29 de septiembre de 2023, el señor Uriarte Otheguy acudió ante nos y le imputó al TPI la comisión del siguiente error, además de cuestionar sus determinaciones de derecho:

> Erró el tribunal al declarar Ha Lugar la solicitud de Sentencia Sumaria presentada por la parte demandante cuando la

---

[15] Íd., págs. 308-327.
[16] Íd., págs. 329-332.
[17] Íd., pág. 333.

> misma no cumplió con ninguno de los requisitos de la Regla 36.3 de Procedimiento Civil, además de que la prueba presentada en evidencia como apoyo a la solicitud de Sentencia Sumaria de la parte no era admisible en derecho.

En suma, argumentó que la moción de Alternative Energy en respuesta a la petición de sentencia sumaria apenas cumplió con las Reglas de Procedimiento Civil, 32 LPRA Ap. V, en cuanto a la contestación y, más aún, no debió ser considerada como una solicitud de sentencia sumaria propiamente. A su entender, la parte apelada no presentó prueba que le permitiera al TPI tomar una decisión conforme a derecho.

Para sustentar su señalamiento de error, planteó que, en dos ocasiones anteriores, Alternative Energy había presentado mociones de sentencia sumaria que incumplían con las Reglas de Procedimiento Civil, *supra*. Aún más, sostuvo que el escrito fue acompañado únicamente por tres documentos, los cuales eran inadmisibles. Según arguyó, en el expediente judicial no obró un documento oficial de Alternative Energy que certificara la deuda con una factura ni se presentó la declaración de un empleado o custodio que evidenciara la veracidad de la solicitud de crédito y garantía personal.

Sobre esto último, expresó que la declaración jurada que acompañó la solicitud fue prestada por el licenciado Jaime Aponte Parsi (Lcdo. Aponte Parsi), quien, según alegó, era el agente residente de Alternative Energy y no un empleado de la corporación ni estaba autorizado para ejercer como el custodio o la persona autorizada con conocimiento del documento. En adición, esbozó que las comunicaciones de correo electrónico entre el señor Uriarte Otheguy y Alternative Energy sucedieron en su carácter de empleado de la compañía y no en su carácter personal. En ese sentido, cualquier reconocimiento de deuda contenido en esos mensajes era un reconocimiento por NECC como deudora y no del

apelante como garantizador de la deuda. Además, alegó que los propios mensajes del Lcdo. Aponte Parsi demostraron que no tenía autoridad para hacer negocios en nombre de Alternative Energy o aceptar cualquier plan de pago propuesto por el apelante.

El 30 de octubre de 2023, Alternative Energy presentó una *Oposición a apelación civil* en la que solicitó que confirmemos la *Sentencia Parcial* emitida por el TPI. En apoyo de su petición, argumentó que la determinación se fundamentó correctamente tanto en los hechos como en el derecho. Según planteó, este caso se trata sobre un cobro de dinero, debidamente demostrado por la parte apelada y reconocido por el propio apelante. Respecto al error señalado, adujo que sometió la evidencia correspondiente según lo establecido en la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3. Por ello, sostuvo que, mediante el *Credit Application* suscrito por el apelante, quedó evidenciado que el señor Uriarte Otheguy aceptó la obligación de pagar la deuda como fiador solidario del contrato entre NECC y Alternative Energy. De igual manera, esbozó que, mediante las comunicaciones por correo electrónico, se probó que el apelante reconoció la deuda y se comprometió al cumplimiento de un plan de pago. Más allá, alegó que, además de los correos electrónicos, sometió evidencia de recibos enviados al apelante para intentar cobrar la acreencia. En otro extremo, sobre la capacidad del Lcdo. Aponte Parsi, arguyó que este tenía conocimiento personal de la deuda, toda vez que gestionó los esfuerzos de cobro y la negociación de los planes de pago. En ese mismo sentido, aseveró que la declaración jurada suscrita por el letrado cumplió con los requisitos de la Regla 902(K) de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 902 (K) para su admisibilidad.

**III.**

**A.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 430 (2013).

Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta. De esta forma se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

Sin embargo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que **sean claros**; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994).

El promovente de este recurso deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

De acuerdo con las Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*, R. 36.1 & 36.2, el promovente de la moción de sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real

respecto a hechos materiales de la controversia. Además, según la Regla 36.3(a) de Procedimiento Civil, *supra*, R. 36.3(a), tendrá que desglosar lo siguiente:

> 1) una exposición breve de las alegaciones de las partes;
> (2) los asuntos litigiosos o en controversia;
> (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
> (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
> (6) el remedio que debe ser concedido.

En cambio, la Regla 36.3(b) de Procedimiento Civil, *supra*, R. 36.3(b) dispone que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) de la inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

En este sentido, el promovido tiene el deber de controvertir la prueba presentada por la parte promovente de la moción de sentencia sumaria. Este no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3; ***SLG Zapata-Rivera v. JF Montalvo***, supra; ***Ramos Pérez v. Univisión***, 178 DPR 200, 215 (2010); ***Cruz Marcano v. Sánchez Tarazona***, 172 DPR 526, 550 (2007). En otras palabras, "la parte opositora tiene el peso de presentar

evidencia sustancial que apoye los hechos materiales que están en disputa". *León Torres v. Rivera Lebrón*, 204 DPR 20, 44 (2020).

Ahora bien, la moción de sentencia sumaria debe resolverse conforme al derecho sustantivo aplicable, y si de las propias alegaciones, admisiones o declaraciones juradas surge alguna controversia, no procede disponer del asunto sumariamente. *Ortiz v. Holsum*, 190 DPR 511, 525 (2014). En este sentido, al evaluar los documentos presentados por las partes, el tribunal deberá utilizar el principio de liberalidad a favor del opositor de la moción. *Ramos Pérez v. Univisión*, supra, págs. 216-217. De haber dudas sobre la existencia de controversias de hechos materiales, deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015). Esto, con el propósito de evitar que una de las partes se vea impedida de ejercer su día en corte. Íd.

De otra parte, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo estableció el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o concesión de una moción de sentencia sumaria. Dictaminó que: "[e]l Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de Sentencia Sumaria". Íd., págs. 21-22. La revisión que realice el foro apelativo deberá ser *de novo* y estará limitado a solamente adjudicar los documentos presentados en el foro apelado. *Vera v. Dr. Bravo*, supra, págs. 334-335. Todas las inferencias permitidas deberán ser a favor de la parte oponente a la moción de sentencia sumaria, de forma que se evalúe el expediente de la manera más favorable hacia dicha parte. *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. Además, deberá constatar que las partes cumplan con los requisitos de forma que dispone la Regla 36, *supra*, tanto en la moción de sentencia sumaria, como en la oposición, y deberá revisar

si existen hechos materiales en controversia. Íd. Si existiesen, el foro apelativo tendrá que exponer los hechos en controversia y los que no, como dispone la Regla 36.4, *supra*. Si el Tribunal Apelativo no encuentra hechos controvertidos, deberá revisar *de novo* si el foro inferior aplicó correctamente el derecho. Íd., pág. 119.

**B.**

En nuestra jurisdicción impera una regla general de exclusión de prueba de referencia, la cual se define como aquella declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado. Regla 801 de las Reglas de Evidencia, *supra*, R. 801. Ahora bien, dentro de ese mismo marco, se reconocen diversas excepciones, las cuales se recogen en la Regla 805 de las Reglas de Evidencia, *supra*, R. 805, aun cuando la persona declarante está disponible como testigo, y la Regla 806 (B) de las Reglas de Evidencia, *supra*, R. 806 (B) cuando el declarante no esta disponible para declarar. En lo pertinente, el inciso (F) de la Regla 805, *supra*, permite que, aunque una persona declarante esté disponible como testigo, una declaración no será excluida en la siguiente circunstancia:

> (F) *Récords de actividades que se realizan con regularidad*: Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(K) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. El término *negocio*, según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro.

Ahora bien, la Regla 902 (K) de las Reglas de Evidencia, *supra,* R. 902 (K) dispone que no se requerirá evidencia extrínseca de autenticación como condición previa para la admisibilidad de récords certificados de actividades que se realizan con regularidad. En específico, el inciso establece lo siguiente:

> El original o un duplicado de un récord de actividades que se realizan con regularidad dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico y los Estados Unidos de América, el cual sería admisible conforme a la Regla 805(F), si se acompaña de una declaración jurada de la persona a cargo de su custodia o de alguna otra persona cualificada, que certifique que dicho récord:
> (1) se preparó en o cerca del momento en que ocurrieron los sucesos o las actividades mencionadas por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta;
> (2) se llevó a cabo en el curso de la actividad realizada con regularidad, y
> (3) se preparó como una práctica regular de dicha actividad.
> La parte que se proponga someter un récord como evidencia, conforme a lo dispuesto en este inciso, tendrá que notificar por escrito su intención a todas las partes contrarias. Además, tendrá que tener el récord y la declaración jurada disponibles para inspección con suficiente antelación a su presentación como evidencia a fin de brindar a la parte contraria una oportunidad justa para refutarlos.

## C.

Es norma reiterada en nuestro ordenamiento jurídico que existe un principio de la autonomía contractual entre las partes, las cuales se encuentran obligadas a cumplir con lo pactado de acuerdo con el principio de *pacta sunt servanda.* **Oriental Bank v. Perapi et al.,** 192 DPR 7, 15 (2014). Lo anterior permite a las partes establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y el orden público. Véase el Artículo 1207 del Código Civil de 1930, 31 LPRA ant. sec. 3372.[18]

Entre los contratos que las partes pueden suscribir, se encuentran los contratos de garantía. Este tipo de contratos tiene

---

[18] En este caso, el Código Civil de 1930 es el estatuto aplicable a la controversia, puesto que era el vigente al momento de los hechos.

por finalidad asegurar la satisfacción de un crédito contra los peligros de la insolvencia total o parcial del deudor. ***Pro. Underwriters v. Dis. Automotriz***, 121 DPR 536, 542 (1988). Un tipo de contrato de garantía es el contrato de fianza. Según establecía el Art. 1721 del Código Civil de 1930, 31 LPRAA sec. 4871, mediante la fianza, se obliga uno a pagar o cumplir por un tercero, en caso de que este último no lo hiciera. Es decir, una tercera persona, conocida como el fiador, se obliga con un acreedor a responder por un deudor en caso de que no cumpla según convenido. J. R. Vélez Torres, *Curso de Derecho Civil: Derecho de contratos*, 1era. ed., San Juan, Universidad Interamericana de Puerto Rico, 1990, T. IV, Vol. II, pág. 528. En nuestra jurisdicción, la fianza: (1) es una **garantía personal**, dado que compromete el patrimonio del fiador; (2) es **accesoria**, puesto que depende de la vida de una obligación principal; (3) es **subsidiaria**, porque el fiador únicamente se obliga a responder en caso de que el deudor incumpla; (4) puede ser **gratuita** u **onerosa**, toda vez que, si bien se concibe como sin costo, el fiador puede solicitar retribución por sus servicios; (5) suele ser **unilateral**, debido a que si es gratuita, solo una parte se obliga, mientras que de intercambiarse una retribución, son al menos dos partes las que se comprometen. Íd., págs. 529-531. (Énfasis nuestro).

Entre las clases de fianza reconocidas por el Art. 1722 del Código Civil de 1930, 31 LPRA ant. sec. 4872, se destaca por su pertinencia la convencional. En esta, tres partes intervienen en el contrato: el deudor, que es el fiado; el acreedor, quien se beneficia de la fianza, y el fiador, el tercero. Vélez Torres, *op. cit.*, pág. 532. Asimismo, existen dos contratos en esta relación jurídica: el contrato preexistente sobre el cual se establece la fianza y el contrato de fianza. Íd.

En otro extremo, el entonces vigente Art. 1729 del Código Civil de 1930, 31 LPRA ant. sec. 4891, establecía que el fiador no podría ser compelido a pagar al acreedor sin antes realizarse excusión de todos los bienes del deudor. Sin embargo, el Art. 1730 del Código Civil de 1930, 31 LPRA ant. sec. 4892, proveía varias excepciones a esta regla, a saber: la renuncia por el fiador; **que este se haya obligado solidariamente con el deudor**; **en caso de quiebra** o concurso del deudor; o cuando el deudor no pudiese ser demandado dentro de Puerto Rico. Aplicada esta excepción, el acreedor tiene dos personas contra las que reclamar entera y directamente el pago: el deudor y el fiador. Vélez Torres, *op. cit.*, pág. 542.

En otro extremo, el Art. 1727 del Código Civil de 1930, 31 LPRA ant. sec. 4877, disponía que: **"[e]l obligado a dar fiador** debe presentar persona que tenga capacidad para obligarse y bienes suficientes para responder de la obligación que garantiza. El fiador se entenderá sometido a la jurisdicción del tribunal o juez del lugar donde esta obligación deba cumplirse". (Énfasis nuestro).

Además, es harto conocido que, en las obligaciones solidarias, cada deudor está obligado a responder por la totalidad de la deuda. Art. 1090 del Código Civil de 1930, 31 LPRA ant. sec. 3101. Por ello, el acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos simultáneamente. Art. 1097 del Código Civil de 1930, 31 LPRA ant. sec. 3108.

### D.

De ordinario, en la reclamación sobre cobro de dinero, el demandante solo tiene que probar que: (1) existe una deuda válida, (2) la deuda no se ha pagado; (3) el demandante es el acreedor; y (4) la parte demandada es la deudora. *Gen. Elec. v. Concessionaries, Inc.,* 118 DPR 32, 43 (1986).

En cuanto a la deuda, es necesario demostrar que la misma es líquida, vencida y exigible. *Ramos y otros v. Colón y otros,* 153

DPR 534, 546 (2001). Dentro de este marco, una deuda es líquida cuando la cantidad debida es cierta y determinada. Íd. Es decir, cuando se conoce la cuantía que se debe. Asimismo, es exigible y vencida cuando debe ser satisfecha por la naturaleza de la obligación o por requerimiento del acreedor. Véase *Guadalupe v. Rodríguez,* 70 DPR 958, 966 (1950).

### E.

Según ha reiterado nuestro Tribunal Supremo, el Art. 7 del Código Civil de 1930, 31 LPRA ant. sec. 7, les permitía a los tribunales acudir a principios generales del derecho basados en equidad para atender las controversias que tengan ante su consideración, cuando no hubiese ley aplicable al caso. *OCS v. Universal,* 187 DPR 164, 171-172 (2012). A partir de ello, incorporó a nuestra jurisprudencia la regla de que nadie puede ir en contra de sus propios actos. Íd. Esta regla se conoce también como la doctrina de actos propios. Su fundamento se encuentra en el entendimiento de que la buena fe se exige en el desenvolvimiento de las relaciones jurídicas, el ejercicio de los derechos y el cumplimiento de las obligaciones. Íd., pág. 172 (citando a *Vivoni Farage v. Ortiz Carro,* 179 DPR 990, 1010 (2010). De esta manera se busca conseguir una interacción efectiva a todos los niveles de la vida diaria y se les permite a todas las personas descansar en la veracidad de las manifestaciones o las actuaciones de otro según lo manifiestan o actúan. Íd. Asimismo, se protege la confianza que deposita una parte que ha confiado razonablemente en una apariencia creada por otra. Íd.

Ahora bien, la doctrina de actos propios depende de la concurrencia de los siguientes factores: (1) una conducta determinada de un sujeto; (2) que haya engendrado una situación contraria a la realidad aparente, la cual sea susceptible de influir en la conducta de los demás; (3) que la apariencia sea base de la

confianza de otra parte que haya procedido de buena fe y que, por ello, haya obrado de una manera que le causaría un perjuicio si su confianza quedara defraudada. Íd., págs. 173-174 (citando a **Vivoni Farage v. Ortiz Carro,** *supra,* págs. 1010-1011).

**IV.**

En el caso de marras, el TPI condenó al señor Uriarte Otheguy al cumplimiento de una garantía personal suscrita por este, en la que se constituyó como fiador de un contrato entre Alternative Energy y NECC. Por ello, determinó que el apelante debía satisfacer la suma de $51,835, más intereses, y mantuvo vigente la reclamación en su contra por daños contractuales. A juicio del foro primario, el apelante suscribió un contrato de fianza al firmar la sección denominada *Personal Guarantee* de un *Credit Application* de NECC con Alternative Energy, lo cual consideró probado por el propio documento. Según razonó, este acuerdo cumplió con los requisitos del contrato de fianza y, mediante este, se estableció la obligación personal y solidaria del señor Uriarte Otheguy del pago de cualquier cantidad de dinero que NECC adeudara a la parte apelada, según razonó. A su vez, resolvió que el apelante reconoció la deuda y se comprometió a un plan de pago, lo cual consideró demostrado por una cadena de correos electrónicos entre las partes.

En oposición, el señor Uriarte Otheguy señaló que el TPI incidió al declarar Ha Lugar la solicitud de sentencia sumaria de la parte apelada cuando no cumplía con la Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3, y al considerar prueba presentada en apoyo a la solicitud que no era admisible en derecho. Según su posición, no debió admitirse el *Credit Application* ni la cadena de correos electrónicos, dado que la declaración jurada del Lcdo. Aponte Parsi presentada a los efectos de certificar su autenticidad era insuficiente. Para sustentar esa alegación, cuestionó la autoridad del licenciado porque, según alegó, era el

agente residente de la corporación y no un testigo con conocimiento o custodio autorizado. De este modo, argumentó que, ante la inadmisibilidad de los documentos, el TPI estaba impedido de condenar al señor Uriarte Otheguy, puesto que no existía un documento oficial de Alternative Energy que certificara la deuda. En todo caso, arguyó que, en los correos electrónicos, el apelante se comunicaba en su carácter de empleado de NECC, no en su carácter personal, y, que, según surge de ellos, el Lcdo. Aponte Parsi no tenía autoridad para negociar ni acordar un plan de pago.

En apoyo de la determinación recurrida, Alternative Energy planteó que la causa de acción de cobro de dinero se fundamentó correctamente. Es su posición que la evidencia no solo era admisible, sino que probó tanto que el señor Uriarte Otheguy se obligó como fiador solidario al pago de la deuda producto del contrato entre NECC y Alternative Energy, como que luego reconoció la deuda y se comprometió a satisfacerla en un plan de pago. A su entender, el Lcdo. Aponte Parsi tenía conocimiento personal de la deuda y su declaración jurada cumplió con los requisitos de las Reglas de Evidencia, *supra*.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, en correcta práctica adjudicativa apelativa, resulta forzoso concluir que el TPI no incidió en el error señalado. La determinación sumaria apelada fue correcta tanto procesalmente como en derecho. Veamos.

En primer lugar, en este caso, ambas partes presentaron sendas solicitudes de sentencia sumaria tras entender que no existían controversias de hechos sustanciales y que, por consiguiente, únicamente correspondía aplicar el derecho y adjudicar el caso. Por un lado, el TPI tuvo ante su consideración la petición del señor Uriarte Otheguy en la que, como cuestión de hecho, aceptó la firma de la garantía personal y, a la misma vez,

planteó que Alternative Energy no entregó documentos aprobando el crédito, ni notificó la cantidad aprobada, ni indagó el crédito del apelante. Aún más, alegó que el contrato de crédito no fue cumplimentado por la parte apelada, ni firmado por su representante. Según esos hechos, arguyó que firmó la garantía como proceso informal y *pro forma* sin la intención de hacer valer sus exigencias y sin que la parte apelada cumpliera su alegado deber de cerciorarse de la capacidad del apelante de responder por la obligación garantizada. Entretanto, el foro primario también consideró la solicitud de Alternative Energy en la que, basándose en el *Credit Application* suscrito por NECC y el señor Uriarte Otheguy, así como los correos electrónicos entre este y el Lcdo. Aponte Parsi, sostuvo que el apelante se comprometió de forma solidaria al pago de toda deuda producto del contrato y que la deuda estaba vencida, líquida y exigible. A estos efectos, la parte apelada acompañó su petición con copia del *Credit Application*, los correos electrónicos y una declaración jurada suscrita por el licenciado. Examinada la moción de Alternative Energy, la cual el TPI declaró Con Lugar, resulta forzoso concluir que el foro primario decidió correctamente al así hacerlo. La petición cumplió con las exigencias de la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3 y, más aún, demostró fehacientemente la procedencia de la causa de acción de la parte apelada. Esto último, surge claramente del *Credit Application* y la garantía personal suscrita por el apelante, la cual estableció <u>palmariamente</u> que se compromete a garantizar personalmente, sin condiciones e irrevocablemente el pago de cualquier suma debida por NECC a Alternative Energy.

En segundo lugar, según el apelante, el TPI no debió considerar el *Credit Application* ni la cadena de correos electrónicos entre el señor Uriarte Otheguy y representantes de Alternative Energy porque la declaración jurada suscrita por el licenciado era

insuficiente para su admisión como prueba. No le asiste la razón. Por un lado, en cuanto al *Credit Application*, el propio apelante reconoció en su moción de sentencia sumaria que firmó la garantía personal el 19 de noviembre de 2018, lo cual consta en el documento sometido en evidencia por Alternative Energy. Por el otro, en cuanto a la cadena de correos electrónicos, se presenta una situación similar, dado que el apelante también reconoce el intercambio y no aduce razón por la cual no deba admitirse en evidencia los mismos. Además, según se desprende de la declaración jurada del Lcdo. Aponte Parsi, este tenía conocimiento del intercambio de correos electrónicos, en el cual participó, y más aún que realizó gestiones de cobro de la deuda al apelante. Como cuestión de hecho, el propio apelante reconoció en su *Apelación* que el licenciado posee conocimiento de la factura, de la deuda y del contenido de las conversaciones por correo electrónico.[19] En este sentido, se cumplió con los requisitos de las Reglas de Evidencia, *supra*, para la admisión de las comunicaciones electrónicas. En todo caso, incluso si no se consideraran los correos electrónicos en los que el señor Uriarte Otheguy reconoció la deuda, el *Credit Application* es prueba suficiente del carácter del apelante como fiador de la deuda.

Sería un contrasentido permitir al apelante beneficiarse de los créditos que se concedieron y resolver contrario a la letra clara del documento de garantía personal suscrito por él.

Por todo lo anterior, resulta imperativo concluir que el TPI no cometió el error señalado por el apelante, que el dictamen es correcto en derecho y, por lo tanto, corresponde la confirmación de la *Sentencia Parcial* apelada.

---

[19] Véase *Apelación*, pág. 19, párrafo número 30.

## V.

Por los fundamentos expuestos, se *confirma* la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


                                          Lcda. Lilia M. Oquendo Solís
                                    Secretaria del Tribunal de Apelaciones